IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TRAVIS HUTCHINS,                          )
AIS #254969,                              )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )          CASE NO. 2:16-CV-324-WHA
                                          )
WALTER MYERS, et al.,                     )
                                          )
            Defendants.                   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Travis Hutchins, an indigent state inmate, challenging actions which occurred during his

incarceration at the Easterling Correctional Facility.  Specifically, Hutchins complains the

defendants acted with deliberate indifference to his safety when they failed to protect him

from attack by inmate Corderis Thomas on March 6, 2016.  Doc. 1 at 3–5.  He also alleges

this attack occurred because the defendants disregarded prison policies.  Doc. 1 at 4–5.

Next, Hutchins complains "a proper investigation [was not] done."  Doc. 1 at 3.  Finally,

Hutchins asserts the defendants acted with deliberate indifference to his medical needs after

the attack by inmate Thomas.  Doc. 1 at 4.

---

[1]All documents and attendant page numbers cited in this Recommendation are those assigned by the Clerk
in the docketing process.

Hutchins names Warden Walter Myers, Assistant Warden Patrice Richie, Capt. Camelia Cargill and Capt. Nathaniel Lawson, all correctional officials employed at Easterling when the challenged actions transpired, as defendants in both their individual and official capacities.[2]   Hutchins seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights.  Doc. 1 at 1 & 6.

The defendants filed a special report, supplemental special report and relevant evidentiary materials in support of their reports — including affidavits, prison reports and medical records — addressing the claims presented by Hutchins.  In these filings, the defendants deny they acted with deliberate indifference to Hutchins' safety or medical needs and also assert they did not violate any of his constitutional rights.

The court issued an order directing Hutchins to file a response to the arguments set forth by the defendants in their special report and supplement thereto and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials.  Doc. 19 at 2.  This order specifically cautioned the parties that "**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and **without further notice to the parties** (1) treat the special report [— as supplemented —] and any supporting evidentiary materials as a

---

[2]The defendants advise that Capt. Cargill's correct surname is Cargle.  Nevertheless, for purposes of this Recommendation, the court will reference this defendant as she is identified by the plaintiff.

motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 19 at 3. Hutchins filed an unsworn response and supporting affidavit in response to this order. Docs. 26 & 26-1.[3]

Pursuant to the directives of the above described order, the court deems it appropriate to treat the defendants' special report and the supplemental special report as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's affidavit in opposition, to the extent it does not expand on his claims or present a new basis for a pending claim, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall

---

[3] The court declines to consider Hutchins' response to the defendants' reports because this response is not a sworn statement nor is it signed with an averment that it was made under penalty of perjury. *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment."); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of summary judgment.").

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty

of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same).

Although factual inferences must be viewed in a light most favorable to the plaintiff and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, the plaintiff's pro se status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Hutchins has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  ABSOLUTE IMMUNITY

To the extent Hutchins requests monetary damages from the defendants in their official capacities, he is not entitled to this relief. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver

> may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his/her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here.  The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (holding consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  The defendants are therefore

entitled to absolute immunity insofar as Hutchins seeks monetary damages from them in their official capacities.

## IV.  DISCUSSION OF CLAIMS FOR RELIEF[4]

### A.  Deliberate Indifference

1. **Failure to Protect**.  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 at 834.

---

[4]In accordance with well-settled law, the court limits its review to the allegations set forth in the complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-910 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (court refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

"Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  The Eleventh Circuit has, however, consistently "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005), citing *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014); citing *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).  With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this

substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29,   As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'   . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person  knew at the time of the incident."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Moreover, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . .  However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir.2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  The plaintiff has the burden of showing that the defendant was in a position to intervene but failed to do so.  *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)).

Consequently, to survive the properly supported motion for summary judgment filed by the defendants, Hutchins must first demonstrate an objectively substantial risk of serious harm existed to him prior to the altercation with inmate Thomas and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, Hutchins must then satisfy the

subjective component.  To do so, Hutchins "must [show] that the defendant subjectively

knew that [Hutchins] faced a substantial risk of serious harm.  The defendant must both be

aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he[/she] must also draw the inference."  *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence
> that the defendant-official had subjective knowledge of the risk of serious
> harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).   In
> determining  subjective  knowledge,  a  court  is  to  inquire  whether  the
> defendant-official was aware of a "***particular threat or fear felt by [the]
> [p]laintiff***."   *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003)
> (emphasis  added).   Moreover,  the  defendant-official  "must  be  aware  of
> specific facts from which an inference could be drawn that a substantial risk
> of  serious  harm  exists — and  the  prison  official  must  also  draw  that
> inference."  *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Hutchins alleges the defendants acted with deliberate indifference to his safety

regarding a physical altercation with inmate Corderis Thomas on March 6, 2016.  In

support of this claim, Hutchins maintains that before this altercation he requested transfer

to a different dorm "to prevent any harm to him" due to "the potential risk of harm that he

faced."  Doc. 1 at 3–4.  Other than this general allegation of potential harm, Hutchins fails

to identify any specific risk of harm he faced.  Additionally, Hutchins asserts that no

correctional officers were assigned to the dorm at the time of the attack at issue.  Doc. 1 at

3.

The defendants adamantly deny they acted with deliberate indifference to Hutchins'

safety.  Specifically, the defendants assert they lacked knowledge that Hutchins generally

feared for his safety at the time of the altercation at issue.  More importantly, the defendants

maintain they had no knowledge that inmate Thomas posed a substantial risk of harm to Hutchins prior to the altercation between these inmates.  The defendants further assert that sufficient correctional personnel were assigned to Dorm C at the time of the altercation, i.e., one cubicle officer, an officer roving the C2 side of the dorm and two officers roving the C1 side of the dorm, for purposes of providing security.  Doc. 18-2 at 3; Doc. 18-3; Doc. 18-4; Doc. 18-5.

Hutchins fails to identify the basis for his perceived potential risk of general harm.  Moreover, Hutchins does not allege that he complained to any prison official that he was in serious danger of being attacked by inmate Thomas.  The record is likewise devoid of evidence that Hutchins provided information to the defendants of a credible threat made to him by inmate Thomas from which the defendants could infer that a substantial risk of harm existed to Hutchins prior to the attack at issue.  In sum, there is no evidence before the court that the defendants had knowledge of any impending risk of harm posed by inmate Thomas to Hutchins.  Instead, the record establishes that the altercation occurred without notice or provocation when "inmate Thomas . . . entered Dormitory C2 at approximately 4:30 AM and confronted inmate Corderis Thomas, B/269556.  A fight between inmates Thomas and Hutchins ensued."  Doc. 13-7 at 2.  No correctional officer observed the fight and neither inmate reported the incident to officers at the time it occurred.  It is undipsted that correctional officials first received notice of the fight approximately three hours after the altercation when Hutchins reported to the health care unit seeking medical treatment for injuries he suffered during the altercation with inmate Thomas.  Doc. 13-7 at 2.  At this

time, the officer assigned to the health care unit, Bryan Gavins, immediately referred Hutchins for medical treatment.  A nurse examined Hutchins and, upon completion of her examination, released him to correctional officials for return to his cell.  Doc. 18-1 at 1–2; Doc. 13-2 at 2–3.

Hutchins has failed to present any evidence showing inmate Corderis Thomas posed "an objectively substantial serious risk of harm" to him on March 6, 2016, a requisite element for establishment of deliberate indifference to his safety.  *Marsh*, 268 F.3d at 1028–29.  Furthermore, even if Hutchins had satisfied the objective component, his deliberate indifference to safety claim nevertheless fails as he has not demonstrated that the defendants were subjectively aware of any risk of harm to him posed by inmate Thomas prior to the altercation made the basis of this complaint.  *Johnson*, 568 F. App'x at 722 (holding that complaint properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (concluding that "the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim.  While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate . . . he did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him.  Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a

failure to protect from the attack. . . .  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate]."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was generally "in fear for [his] life."); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that Plaintiff entitled to no relief where he failed to identify "any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants].").

The record in this case contains no evidence showing that the defendants acted with deliberate indifference to Hutchins' safety.  Thus, summary judgment is due to be granted in favor of the defendants on the failure to protect claim.

2. **<u>Medical Treatment</u>**.  Hutchins alleges "he never got treated for his stab wounds; . . . never got to see a doctor to assure" his wounds would not cause "disfunctions to the body or even infection [and] never saw a dentist about [possible] nerve damage due to teeth

being knocked out." Doc. 4 at 4. The undisputed medical records refute Hutchins'
allegations of deliberate indifference with respect to the injuries he suffered on March 6,
2016. In addition, there is no evidence that the defendants, all of whom are correctional
officials, interfered with Hutchins' access to medical or dental treatment.

To prevail on a claim concerning an alleged denial of adequate medical or dental
treatment, an inmate must, at a minimum, show that the defendants acted with deliberate
indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor
v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir.
1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Specifically, correctional
personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence
deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292;
*Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations
omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a
condition, but the knowledge of necessary treatment coupled with a refusal to treat or a
delay in [the acknowledged necessary] treatment."

> That . . . negligence . . . is insufficient to form the basis of a claim for
> deliberate indifference is well settled. *See Estelle v. Gamble*, 429 U.S. 97,
> 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d
> 1537, 1543 (11th Cir. 1995). Instead, something more must be shown.
> Evidence must support a conclusion that a prison [official's] harmful acts
> were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38,
> 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85
> F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is
> equivalent of recklessly disregarding substantial risk of serious harm to
> inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than
> mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb
> Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994)

> (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

When seeking relief based on deliberate indifference to medical needs, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk to the prisoner's health or safety). Negligence does not "become a constitutional violation simply because the victim is incarcerated." *Farmer*, 511 U.S. at 835, 836 (A complaint alleging negligence in obtaining medical treatment for an inmate "does not state a valid claim of [deliberate indifference] under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence" to proceed on an Eighth Amendment claim.).

Furthermore, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . .

which is in turn defined as requiring two separate things 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference). Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Scott*, 550 U.S. at 380.

The undisputed medical records belie Hutchins' claim that the defendants denied him medical treatment for injuries suffered in the March 6, 2016 altercation with inmate Thomas. A thorough review of these documents demonstrates that correctional personnel first became aware of Hutchins' injuries at approximately 7:35 a.m. on the date of the altercation when Hutchins reported to the health care unit and made contact with Officer Gavins, the officer assigned to provide security for that unit. Doc. 13-7 at 2. Officer

Gavins observed injuries to Hutchins' right shoulder and the right side of his face and immediately escorted Hutchins inside the health care unit for evaluation and treatment by medical personnel.  Doc. 13-2 at 2.

Pamela Chitty, a Registered Nurse, examined Hutchins and assessed his injuries. She addresses his claims regarding a denial of medical treatment by the defendants as follows:

> During the medical assessment [on March 6, 2016] for the body chart, no stress was noted and Inmate Hutchins appeared calm.  It was noted that Inmate Hutchins had two areas of redness to his upper right shoulder/chest area, a small puncture wound to his upper left shoulder, a scratch to his upper right shoulder, a healing scratch to his right elbow, a bruise to his upper left eye, a missing upper front tooth, a skin tear or small puncture to the right side of his mouth, and two skin tears to his bottom lip.  Inmate Hutchins refused to make a statement, and stated only that his front tooth was missing.  He did not, however, have the missing tooth in his possession or make any requests to see a dentist.  When I checked his mouth, there was no active bleeding present, and I was unable to determine how or when he lost his tooth. Additionally, because it was Sunday, there was no dentist on site at the facility; however, I do not recall there being any medical reason at that time to refer him to the dentist for a missing tooth.  After Inmate Hutchins's medical assessment was complete, I cleaned and dressed his wounds.  At approximately 7:48 a.m., [I] released him to Lieutenant Peavy's custody."
>
> . . . . [T]he proper procedure for any inmate seeking medical or dental attention is to fill out a sick call request form.  There is nothing in Inmate Hutchins's medical file to indicate that he submitted any such requests or that any such requests for medical or dental treatment went unanswered following his initial medical assessment and treatment on March 6, 2016.  I have no knowledge of Inmate Hutchins requesting additional medical or dental treatment regarding his injuries of March 6, 2016.

Doc. 18-1 at 1–2.[5]

---

[5]The Body Chart and Initial Health Review compiled contemporaneously with the medical treatment provided to Hutchins corroborate the statements set forth in Nurse Chitty's affidavit.  *See* Doc. 13-2 at 2–3.

Under the circumstances of this case, the court finds that the actions of the defendants did not constitute deliberate indifference. Hutchins' self-serving statements of a lack of due care do not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see also Scott*, 550 U.S. at 380 (holding that a court need not believe a party's version of facts at the summary judgment stage when such version is "blatantly contradicted by the record, so that no reasonable jury could believe it[.]"); *Feliciano*, 707 F.3d at 1253–54 (11th Cir. 2013) (same). In addition, Hutchins has presented no evidence that the defendants consciously disregarded his injuries. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference). Rather, the only evidence before the court indicates that Hutchins was promptly referred to medical personal for evaluation and treatment as soon as a correctional official became aware of his injuries. The evidence further demonstrates that the defendants did not impede Hutchins' access to medical or dental treatment after the altercation. The record is therefore devoid of evidence showing that any defendant acted with deliberate indifference to Hutchins' medical or dental needs.

Insofar as Hutchins seeks to hold the defendants, all correctional officials, liable for the treatment provided by a medical professional, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Based on the foregoing, summary judgment is due to be granted in favor of the defendants on this claim.

## B.  Failure to Follow Prison Policies

To the extent Hutchins asserts that the defendants violated their own policies or administrative regulations, he is entitled to no relief.  The law is well-settled that infringements of agency rules, regulations, policies or procedures do not, without more, amount to constitutional violations.  *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (holding that Plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995) (noting that prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designated to confer [constitutional] rights on inamtes"); *Magluta v. Samples,* 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97

F.3d 91, 94 (5th Cir. 1996) (claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751–52 (1979) (mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 F. App'x 300, 303 (4th Cir. 2009) (same).  For these reasons, the defendants are entitled to summary judgment on Hutchins' claim alleging a violation of prison policies or regulations.

### C.  Lack of Investigation

Hutchins complains that the defendants deprived him of a proper investigation of the altercation with inmate Thomas.  Doc 1 at 3.  This allegation, however, fails to state a claim cognizable in this cause of action.

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."  *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985).  "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989).  "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials."  *Banks v. Annucci*, 48 F.Supp.3d 394, 414 (N.D. N.Y. 2014); *Wilkins v. Illinois Dept. of Corrections*, 2009 WL 1904414, *9 (S.D. Ill. 2009) (recognizing that inmates have no due process right to an investigation); *see also Torres v.*

*Mazzuca*, 246 F.Supp.2d 334, 342 (S.D. N.Y. 2003) (holding that prisoners do not have a due process right to an investigation of grievances).  Based on the foregoing, the court concludes that the alleged lack of an adequate investigation does not rise to the level of a constitutional violation and, therefore, provides Hutchins no basis for relief.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be granted.

2.  Judgment be entered in favor of the defendants and against the plaintiff.

3.  This case be dismissed with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **May 8, 2019**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which an objection is made.  Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-

1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 24th day of April, 2019.


_____/s/ Charles S. Coody_____
UNITED STATES MAGISTRATE JUDGE